# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| MICHAEL ESPINOSA ) <br> 413 S. 6th Street ) <br> Camden, NJ 08013 ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PROLINK STAFFING SERVICES, LLC ) <br> d/b/a PROLINK HEALTHCARE, LLC ) <br> 10700 Montgomery Road, Suite 226 ) <br> Cincinnati, OH 45242; AND ) <br> ) <br> FIRST ADVANTAGE BACKGROUND ) <br> SERVICES CORP ) <br> 1 Concourse Pkwy Ste 200 ) <br> Atlanta, GA 30328 ) <br> ) <br> Defendants. ) | CIVIL ACTION NO.:_____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT – CIVIL ACTION

Plaintiff Michael Espinosa ("Plaintiff" or "Mr. Espinosa") hereby brings this action against Defendants ProLink Staffing Services, LLC d/b/a ProLink Healthcare, LLC ("ProLink") and First Advantage Background Services Corp ("First Advantage") (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this complaint to redress violations by Defendants of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et al.* Specifically, Plaintiff contends that Defendant ProLink violated 15 U.S.C. § 1681b(b)(3)(A) by failing to provide him with notification of its intention to take adverse action based on an erroneous consumer report, along with a reasonable opportunity to contest the inaccurate information contained therein, prior to actually taking such action and rescinding its offer of employment. Plaintiff further contends

that Defendant First Advantage violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information in his background report, resulting in the reporting of inaccurate criminal history information which led to Defendant ProLink's decision to rescind its offer of employment to Plaintiff.

2. As a result of Defendant's improper and willful policies and practices, Plaintiff has suffered damages.

3. Plaintiff brings this action for monetary damages and other equitable and ancillary relief, to seek redress for Defendant's willful, unlawful, and improper conduct.

## PARTIES

4. Plaintiff Michael Espinosa is a citizen of the United States and State of New Jersey with a current address at 413 S. 6th Street, Camden, NJ 08013.

5. Upon information and belief, ProLink Staffing Services, LLC d/b/a ProLink Healthcare, LLC is a limited liability company organized and existing under the laws of the State of Ohio with a headquarters and principal place of business located at 10700 Montgomery Road, Suite 226, Cincinnati, OH 45242

6. Upon information and belief, First Advantage Background Services Corp is a for-profit corporation duly organized and existing under the laws of the State of Florida, with a headquarters and principal place of business located at 1 Concourse Pkwy Ste 200, Atlanta, GA 30328.

7. At all times relevant hereto, Defendants acted or failed to act through their agents, servants, and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendants.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1681, which provides, in relevant part, that suit under the FCRA "may be brought in any appropriate United States district court, without regard to the amount in controversy…." See 15 U.S.C. § 1681.

9. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

10. Personal jurisdiction over Defendant ProLink exists in the State of Ohio as Defendant ProLink resides and does business in the State of Ohio, where it maintains its headquarters and principal place of business.

11. Personal jurisdiction over Defendant First Advantage exists in the State of Ohio as Defendant First Advantage regularly conducts business in the State of Ohio and this judicial district, including, but not limited to with respect to its provision of background check services to Defendant ProLink in the transaction giving rise to this action.

12. At all relevant times, First Advantage was a Credit Reporting Agency ("CRA") as defined in 15 U.S.C. § 1681a(f).

13. At relevant times, ProLink was a "user" and "person" who obtained from First Advantage consumer reports for employment purposes under the FCRA.

14. The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as Defendants conduct business in this district, and the unlawful practices of which Plaintiff is complaining were committed in this district.

**FACTUAL BACKGROUND**

15. Paragraphs 1 through 14 are hereby incorporated by reference as though the same were fully set forth at length herein.

16. On or around February 11, 2021, ProLink extended an offer of employment ("Offer Letter") to Plaintiff for placement with the California Department of Health ("CDH"). A true and correct copy of the Offer Letter has been attached hereto as Exhibit "A."

17. Per the Offer Letter, Mr. Espinosa's placement was projected to last from February 22, 2021 through May 22, 2021, during which time he would be guaranteed forty-eight (48) hours per week at $118 per regular hour and $177 per overtime hour, for at least $6,136 per week, plus substantial benefits amounting to nearly $2,000 (including, but not limited to *per diem* payments for lodging, meals, and incidentals, on-call pay, and holiday pay).

18. As a condition of his employment with ProLink, Mr. Espinosa was required, *inter alia*, to submit to and successfully pass ProLink's "background and drug screening process."

19. On February 13, 2021, Mr. Espinosa accepted ProLink's offer by returning a signed copy of the Offer Letter to ProLink's attention.

20. Understanding that he would soon be commencing a three (3) month placement, Mr. Espinosa deferred an extension of the contract he was then working under and entered into a lease for an apartment in Los Angeles, where he was told his assignment would be.

21. On February 16, 2021, Mr. Espinosa received a call from his ProLink recruiter, Tyler Thatcher ("Mr. Thatcher"), advising him, "ProLink will no longer be moving forward with employment," due to the results of his background check.

22. When Mr. Espinosa asked why, Mr. Thatcher simply stated that he was "not at liberty" to speak with him about it, and suggested Mr. Espinosa reach out to First Advantage to "open up a dispute."

23. The following day, after reviewing the consumer report and doing his own research, Mr. Espinosa realized that First Advantage had likely confused him with a different

4

Michael Espinosa, whose disorderly person's offense in Bergen County, NJ, for theft of property valued less than $200, was the sole objectionable mark on his entire consumer report.

24. Although ProLink had already rescinded his offer letter, Mr. Espinosa informed Mr. Thatcher of his findings.

25. Upon information and belief, Mr. Thatcher then spoke with the custodian of criminal records of the Bergen County Superior Court, a woman named Debbie, who verified that First Advantage had indeed confused Mr. Espinosa with a different Michael Espinosa, despite the fact that none of their personal identifiers matched, including their social security numbers, driver's license numbers, or dates of birth.

26. Despite this clear refutation of the sole negative mark on Mr. Espinosa's background check, Mr. Thatcher advised him that ProLink would have to "follow protocol" and would not be able to reverse its decision unless and until First Advantage cleared his background check, which would take between fifteen (15) and thirty (30) days.

27. On February 27, 2021, Mr. Espinosa received a termination letter ("Termination Letter") from ProLink, stating, "This letter confirms that your employment with ProLink will terminate officially at the end of business on 02/16/2021." A true and correct copy of the Termination Letter has been attached hereto as Exhibit "B."

28. When Mr. Espinosa spoke with Mr. Thatcher about this letter, Mr. Thatcher claimed that it had been sent by "mistake," and that Mr. Espinosa was still eligible for placement upon clearance by First Advantage.

29. However, on March 9, 2021, Mr. Thatcher told Mr. Espinosa, "It looks like all those contracts [i.e. with CDH] are on hold."

5

30. While ProLink verbally informed Mr. Espinosa that it would not be hiring him due to his background check on February 16, 2021, ProLink failed to provide Mr. Espinosa with written notification of its intention to take adverse action against him due to his background check, as required by the FCRA, until March 19, 2021, and then only after Mr. Espinosa's specific request.

31. In this regard, while Brooke Sheets ("Ms. Sheets"), Compliance Onboarding Manager with ProLink, claimed that ProLink had already mailed Mr. Espinosa copies of the pre-adverse action and adverse action notifications required as under the FCRA on or around February 16, 2021, she nevertheless agreed to "work with her contact" at First Advantage to get additional copies to him.

32. Shortly thereafter, Mr. Espinosa received both a "Pre-Adverse Action Notification" and an "Adverse Action Notification" from ProLink.

33. In the "Pre-Adverse Action Notification," ProLink advised Mr. Espinosa, "A decision is currently pending concerning your application with our company. . . We may take adverse action related to your employment with us based on information in the enclosed consumer report and we ask that you carefully review it and the federal notice [of rights under the FCRA]." A true and correct copy of the Pre-Adverse Action Notification has been attached hereto as Exhibit "C."

34. The letter continued, advising, "If there are any errors or incomplete information in the consumer report, please let us know within 5 business days of the date of the receipt of this letter."

35. Notwithstanding this five-business-day deadline, in the accompanying "Adverse Action Notification," ProLink advised that it had *already taken* this adverse action, advising Mr.

Espinosa, "We regret to inform you that we are unable to consider you further for an employment opportunity with our company. This decision was made, in part, from information we received in the consumer report from First Advantage, our employment screening vendor." A true and correct copy of the Adverse Action Notification has been attached hereto as Exhibit "D."

36. Notably, while Mr. Espinosa did not receive copies of these notifications until they were emailed to him on March 19, 2021, both notifications were dated for February 16, 2021, the date on which Mr. Espinosa was advised his contract was being rescinded.

37. Upon information and belief, at least two (2) individuals whom ProLink hired and placed with CDH after Mr. Espinosa, but who had not yet received assignments (unlike Mr. Espinosa), received "staging" pay at their contracted rates, including one nurse with the same contract as Mr. Espinosa who was receiving $8,000 per week.

38. ProLink was required to provide Mr. Espinosa with a copy of his consumer report along with notification of its intention to take adverse action based on it before taking any adverse action. See 15 U.S.C. § 1681b(b)(3)(A).

39. As detailed above, ProLink notified Mr. Espinosa of its decision to rescind his employment offer on February 16, 2021, without providing him any written notice or opportunity to respond as required under the FCRA.

40. Furthermore, even assuming that ProLink *did* mail Mr. Espinosa a copy of his Pre-Adverse Action Notification on February 16, 2021, it would have done so on the same date it sent Plaintiff's Adverse Action Notification.

41. Any attempt to excuse the sending of these contradictory letters as a clerical error or mistake is belied by Mr. Thatcher's call with Mr. Espinosa on February 16, 2021, during which he said ProLink "will no longer be moving forward with employment."

42. Accordingly, ProLink failed to provide Mr. Espinosa with a real opportunity to contest the contents of his background report before relying up omit to rescind his offer of employment, in violation of the FRCA.

43. Moreover, because ProLink clearly did not provide Mr. Espinosa with a copy of his consumer report and notice of its intention to take adverse action against him before actually undertaking such adverse action, ProLink's violation of the FCRA was clearly willful.

44. In the background check it conducted for ProLink on February 10, 2021, First Advantage inaccurately reported that Plaintiff had been found guilty of a disorderly person's offense – theft by unlawful taking moveable property, value less than $200 – on June 24, 2019 in Bergen County, NJ.

45. Plaintiff does not have a criminal background.

46. Indeed, had First Advantage taken reasonable care to compare the social security number, driver's license, date of birth, or residential address of Plaintiff and the "Michael Espinosa" with the aforementioned disorderly person's offense, it would have noticed that none of these personal identifiers matched, and therefore submitted a completely clear report to ProLink.

47. On or around February 16, 2021, Plaintiff initiated the dispute process with First Advantage, requesting that First Advantage correct its report by removing the aforementioned inaccurate criminal history information.

8

48. Nevertheless, despite its clearly demonstrable error, First Advantage failed to correct Plaintiff's report until on or around March 17, 2021, when it finally released the corrected information to ProLink, leading ProLink to determine that Plaintiff was eligible for employment.

49. As a result of First Advantage's failure to follow reasonable verification procedures, it included on Plaintiff's consumer report inaccurate criminal history information which led directly to the recission of Plaintiff's offer of employment with ProLink, resulting in lost wages and benefits, and other incidental economic damages.

50. As a result of these FCRA violations, ProLink and First Advantage are each liable to Plaintiff for actual and statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

51. As a result of its own, independent FCRA violation, First Advantage is liable to Plaintiff for his actual damages resulting from the inaccuracies contained in his First Advantage report, as well as attorneys' fees and costs. 15 U.S.C. § 1681o.

52. Defendants' conduct and omissions were willful. Because the FCRA was enacted in 1970, Defendants have had years to become compliant but have failed to do so.

53. As a result of Defendants' deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotions, benefits, earnings and earnings potential, loss of potential benefits, and other economic damages, and also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation and damage to reputation.

## COUNT I
## FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)
## Against Defendant ProLink

54. Paragraphs 1 through 53 are hereby incorporated by reference as though the same were fully set forth at length herein.

55. Under the FCRA, ProLink was required to provide Mr. Espinosa with a copy of his consumer report along with notification of its intention to take adverse action based on it before taking any adverse action. See 15 U.S.C. § 1681b(b)(3)(A).

56. Courts have held that the purpose of this requirement is "to provide individuals an opportunity to contest inaccurate information and to avoid an adverse decision by a potential employer based on erroneous information." See Ramos v. Genesis Healthcare, LLC, 141 F. Supp. 3d 341, 347 (E.D. Pa. 2015).

57. In this context, "adverse action" means "a denial of employment or any decision for employment purposes that adversely affects any current of prospective employee." See id. (quoting 15 U.S.C. § 1681(a)(k)(1)(B)(iv)). An adverse action occurs once a prospective employer's decision "is communicated or takes effect." See id. at 348.

58. As detailed above, ProLink notified Mr. Espinosa of its decision to rescind his employment offer on February 16, 2021, without providing him any written notice as required under the FCRA. Furthermore, even assuming that ProLink mailed Mr. Espinosa a copy of his Pre-Adverse Action Notification, it would have done so on the same day (i.e. February 16, 2021) as it issued its Pre-Adverse Action Notification.

59. Defendant ProLink, by the above-referenced actions, has willfully violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(3).

60. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgement in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Actual damages in an amount to be determined at trial;

B. Compensatory damages for emotional distress in an amount to be determined at trial;

C. Statutory and punitive damages for Defendant's practices which were committed with malicious and reckless indifference to Plaintiff's rights;

D. Plaintiff's costs, disbursements, and attorneys' fees incurred for prosecuting this action;

E. Pre-judgment interest in an appropriate amount; and

F. Such other and further relief as is just and equitable under the circumstances.

### COUNT II
### FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### Against Defendant First Advantage

61. Paragraphs 1 through 60 are hereby incorporated by reference as though the same were fully set forth at length herein.

62. Under the FCRA, First Advantage was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff. See 15 U.S.C. § 1681e(b).

63. As detailed above, First Advantage failed to follow reasonable procedures when it included an inaccurate entry on Plaintiff's criminal background check, by, *inter alia*, failing to verify that Plaintiff was same Michael Espinosa who was found guilty of the offense in question, and ignoring several clear indicators that he was not.

64. As a result of First Advantage's failure to comply with the FCRA, inaccurate criminal history information was included on Plaintiff's consumer report to Defendant ProLink, resulting in the recission of Plaintiff's offer of employment.

65. Defendant First Advantage, by the above-referenced actions, has willfully violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(3).

66. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgement in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Actual damages in an amount to be determined at trial;

B. Compensatory damages for emotional distress in an amount to be determined at trial;

C. Statutory and punitive damages for Defendant's practices which were committed with malicious and reckless indifference to Plaintiff's rights;

D. Plaintiff's costs, disbursements, and attorneys' fees incurred for prosecuting this action;

E. Pre-judgment interest in an appropriate amount; and

F.      Such other and further relief as is just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

*/s/ Andrew Kimble*
Andrew Kimble, Esq.
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Columbus, OH 45236
Telephone: (513) 715-8711
akimble@billerkimble.com
Attorneys for Plaintiff

**MURPHY LAW GROUP, LLC**
Michael Groh, Esq. (*pro hac vice* application forthcoming)
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
mgroh@phillyemploymentlawyer.com
Attorneys for Plaintiff

Dated: February 24, 2022

## **DEMAND TO PRESERVE EVIDENCE**

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to his potential claims and his claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.